Benjamin E. Sedrish
Ashley J. Burden
Allison V. Passman
Commodity Futures Trading Commission
525 W. Monroe St., Ste. 1100
Chicago, IL 60661
Tel. (312) 596-0700

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
|  | ) Case No.: 4:21-cv-5050 |
| Plaintiff, | ) |
|  | ) **COMPLAINT FOR** |
| vs. | ) **INJUNCTIVE RELIEF,** |
|  | ) **CIVIL MONETARY** |
|  | ) **PENALTIES, AND OTHER** |
| CODY EASTERDAY, EASTERDAY RANCHES, INC., | ) **EQUITABLE RELIEF** |
|  | ) |
|  | ) **JURY TRIAL REQUESTED** |
| Defendants. | ) |

Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC"), an independent federal agency, alleges as follows:

## I.    SUMMARY

1.    For more than 10 years, Defendant Cody Easterday accumulated staggering losses speculatively trading in the cattle futures markets, ultimately amassing more than $200 million in losses in his personal and corporate accounts.

To meet margin calls, Easterday concocted a scheme to defraud one of his biggest business partners.

2.      Beginning in or before October 1, 2016 and continuing to at least December 1, 2020 ("Relevant Period"), Defendants Easterday Ranches, Inc. ("Easterday Ranches") and Cody Easterday operated a scheme to defraud a producer of beef and pork products ("Producer") out of more than $233 million by submitting to the Producer fabricated invoices for reimbursement for cattle that Easterday Ranches had agreed to purchase and care for on behalf of the Producer.

3.      In or around November 2020, Cody Easterday admitted to a Producer representative that he had caused Easterday Ranches to submit invoices to the Producer for cattle that never existed, and that he did so to generate money to cover millions of dollars of losses he and Easterday Ranches incurred while engaging in speculative trading in the cattle and corn futures markets.

4.      In furtherance of the fraud, in at least 2017 and 2018, Easterday caused Easterday Ranches to submit false cattle inventory, purchase, and sales figures to the Chicago Mercantile Exchange ("CME") in two hedge exemption applications to seek permission to exceed the exchange's speculative position limits and avoid disciplinary action.

5.      Because Easterday Ranches was not entitled to any hedge exemptions as a result of the false information in its hedge exemption applications, Easterday

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

Ranches, through Easterday's actions, violated CME's position limits in 2017 and 2018.

6.    Easterday also admitted to the fraud and false statements to the CME to the Department of Justice in or about March 2021.

7.    By engaging in the conduct summarized above, Defendants violated the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2018), and accompanying regulations ("Regulations"), 17 C.F.R. pts. 1–190 (2020).  Namely, by this conduct and further conduct described below, Defendants have engaged in acts and practices in violation of the following:

     a.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2020), which prohibit fraud in connection with commodity transactions;

     b.    Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2018), which prohibits false statements to entities registered under the Act; and

     c.    Section 4a(e) of the Act, 7 U.S.C. § 6a(e) (2018), which prohibits exceeding position limits established by exchanges.

8.    Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel Defendants' compliance with the Act and Regulations.

9.     In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

## II.     JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2018) (federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder.

11.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Defendants are found in and inhabit the Eastern District of Washington, Defendants transacted business in this District, and the acts and practices in violation of the Act and Regulations occurred within this District, among other places.

## III.    PARTIES

12.    Plaintiff **Commodity Futures Trading Commission** is the independent federal regulatory agency charged with the administration and enforcement of the Commodity Exchange Act and Regulations promulgated thereunder.

13.    Defendant **Cody Easterday** is an individual who, during the Relevant Period, was a co-owner and co-manager of Easterday Ranches.  On information and belief, Cody Easterday resides in Mesa, Washington.  Easterday has never been registered with the Commission.

14.    Defendant **Easterday Ranches, Inc.** is a Washington corporation with its principal place of business in Pasco, Washington.  Easterday Ranches filed for bankruptcy protection on February 1, 2021.  Easterday Ranches has never been registered with the Commission in any capacity.

## IV.    FACTS

### A. The Producer and Easterday Ranches' Business Relationship

15.    The Producer is part of a family of companies that together constitute one of the largest food suppliers in the world.  The Producer, which is headquartered in South Dakota, operates a beef processing plant in Pasco, Washington.

16.    Dating back to at least 2010, Easterday Ranches entered into a series of cattle feeding agreements with the Producer, pursuant to which Easterday Ranches would purchase and fatten cattle for delivery to the Producer.

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

17.    For almost all of the Relevant Period, the business relationship between the Producer and Easterday Ranches was governed by a February 20, 2017 Cattle Feeding Agreement ("Agreement"), under which Easterday Ranches agreed to procure or care for up to 145,000 to 180,500 head of cattle per year for the Producer. Pursuant to an August 20, 2020 amendment, the Agreement's term was extended through August 20, 2021.

18.    Cody Easterday, as President of Easterday Ranches, signed both the Agreement and the August 2020 amendment thereto.

19.    Cody Easterday also signed a personal guaranty of the Agreement, "unconditionally, irrevocably, and absolutely guarantee[ing], as primary obligor[] and not as suret[y], the full and timely payment, performance, and satisfaction by EASTERDAY RANCHES, INC. of all their obligations to [the Producer] pursuant to the terms of this agreement."

20.    Under the Agreement, Easterday Ranches agreed to purchase, feed, and manage the purchased cattle "to an acceptable finished weight," at which point the cattle would be delivered to the Producer's Pasco, Washington plant for slaughter. Until delivery, Easterday Ranches was entitled to reimbursement for the initial purchase price, plus periodic reimbursement for certain "grow costs" according to a procedure set forth in the Agreement whereby Easterday Ranches would bill the Producer twice monthly for such costs.

21.    Upon delivery of the fattened cattle, Easterday Ranches would be reimbursed pursuant to compensation according to schedule set forth in the Agreement.

**B. Cody Easterday Admits to Defrauding the Producer**

22.    At all relevant times, Easterday and Easterday Ranches each maintained futures trading accounts that traded livestock and grain futures. Easterday controlled the futures trading in the trading accounts in his name and in Easterday Ranches' name.

23.    For more than 10 years, Easterday engaged in speculative trading in the cattle futures markets in Easterday Ranches' corporate accounts and his personal trading accounts.  His trading resulted in millions of dollars of losses every year, ultimately totaling more than $200 million.  The vast majority of those trading losses occurred in the corporate accounts.  To cover margin calls, Easterday devised a scheme to defraud the Producer.

24.    Beginning in or around October 2016, Easterday knowingly and intentionally prepared false invoices and caused Easterday Ranches to submit them to the Producer for the purpose of deceiving the Producer.  Using these false invoices, Easterday intended to induce the Producer to pay for both purchases and grow costs of more than 200,000 "ghost cattle" that Easterday Ranches had never actually purchased or cared for.

25.    These false invoices were submitted by Easterday Ranches from its Pasco, Washington offices to the Producer's headquarters in South Dakota, where an employee would review and then approve the false invoices for reimbursement.

26.    Given the parties' long business relationship, the Producer justifiably relied on the invoices submitted by Easterday Ranches and paid Easterday Ranches more than $233 million to which it was not entitled.  The Producer never took delivery of the 200,000 ghost cattle for which it had reimbursed Easterday Ranches.

27.    Easterday admitted to this fraudulent scheme in or around November 2020 when confronted by a Producer representative with evidence of the fraud. Easterday further admitted to the fraud in or around March 2021 to the Department of Justice.  Easterday acknowledged that he engaged in the fraudulent scheme to cover losses he incurred engaging in speculative trading in the cattle and corn futures markets.

**C. Defendants' False Statements to CME**

28.    On or around October 16, 2017, a member of CME's Market Regulation Department emailed Easterday Ranches' futures commission merchant ("FCM"), noting that Easterday Ranches had carried short positions in feeder cattle futures that exceeded CME speculative position limits.  According to the CME email, Easterday Ranches' intraday high position in feeder cattle contracts on

October 13, 2017 was 329, or 29 contracts above the CME exchange-set position limit for feeder cattle.

29.     This email stated that, if Easterday Ranches wanted to seek an exchange position limit exemption because its short position was being carried for hedging purposes, it would need to fill out applications detailing the physical exposure underlying the hedge positions.

30.     In response to the CME email, on or around October 17, 2017, Easterday completed and signed on Easterday Ranches' behalf a CME Group Application to Exceed Position Limits (the "2017 Application").  In the 2017 Application, Easterday set forth the cattle inventory at Easterday Ranches as follows:

1. Please list your cash exposure in the following categories for the previous 12 months.

| Month | Year | Inventory | Total Purchases | Fixed Price Purchases | Total Sales | Fixed Price Sales |
|---|---|---|---|---|---|---|
| Oct | 2016 | 91183 | 24095 | 24095 | 13544 | 13544 |
| Nov | 2016 | 91008 | 14407 | 14407 | 10865 | 10865 |
| Dec | 2016 | 88231 | 5239 | 8238 | 11349 | 11349 |
| Jan | 2017 | 86435 | 10502 | 10502 | 11612 | 11612 |
| Feb | 2017 | 85049 | 8217 | 8217 | 9079 | 9079 |
| Mar | 2017 | 82645 | 8304 | 8304 | 9543 | 9543 |
| Apr | 2017 | 75403 | 10048 | 10048 | 11746 | 11746 |
| May | 2017 | 91388 | 5456 | 5456 | 10266 | 10266 |
| June | 2017 | 96400 | 15282 | 15282 | 10093 | 10093 |
| July | 2017 | 97889 | 15957 | 15957 | 13468 | 13468 |
| Aug | 2017 | 91264 | 8237 | 8237 | 15870 | 15870 |
| Sep | 2017 | 91007 | 10546 | 10546 | 10255 | 10255 |
| Unit of Measure | | | | | | |

# All Numbers In Head Count

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

31.    Easterday described the Easterday Ranches hedging strategy as follows: "use live & feeder cattle futures to hedge live & feeder cattle inventory."

32.    The 2017 Application materially overstated Easterday Ranches' actual cattle inventory, purchases, and sales.

33.    Based upon the materially false and misleading information provided by Easterday, who was not engaged solely in bona fide hedging activities to hedge the represented cash risks of Easterday Ranches, on or around October 31, 2017, CME's Market Regulation Department sent Easterday a letter noting that it had approved the 2017 Application and increased Easterday Ranches' feeder cattle position limit.

34.    On or around July 12, 2018, a member of CME Group's Market Regulation Department emailed Easterday Ranches' FCM, noting that Easterday Ranches had carried positions in live cattle futures that exceeded CME exchange-set position limits.  According to the CME email, Easterday Ranches' intraday futures-equivalent high position in live cattle contracts on July 11, 2018 was 6,426.645, or 126.645 contracts above the CME exchange-set position limit for live cattle.

35.    This email noted that, if Easterday Ranches wanted to seek an exchange position limit exemption because its short position was being carried for hedging purposes, it would need to fill out applications detailing the physical exposure underlying the hedge positions.

36.     In response, on or around July 12, 2018, Easterday completed and signed on Easterday Ranches' behalf a CME Group Application to Exceed Position (the "2018 Application").  In the 2018 Application, Easterday set forth the following cattle inventory at Easterday Ranches:

1. Please list your cash exposure in the following categories for the previous 12 months.

| Month | Year | Inventory | Total Purchases | Fixed Price Purchases | Total Sales | Fixed Price Sales |
|---|---|---|---|---|---|---|
| July | 2017 | 103,500 | 12,850 | 12850 | 11,350 | 11350 |
| August | 2017 | 104,700 | 11,325 | 11,325 | 12,175 | 12,175 |
| September | 2017 | 103,858 | 13,125 | 13125 | 12,425 | 12,425 |
| October | 2017 | 104,550 | 11,800 | 11,800 | 11,245 | 11,245 |
| November | 2017 | 104,105 | 9825 | 9825 | 10,327 | 10327 |
| December | 2017 | 103,603 | 7345 | 7345 | 9844 | 9844 |
| January | 2018 | 101,104 | 7,187 | 7187 | 11,325 | 11325 |
| February | 2018 | 96,966 | 8175 | 8175 | 9845 | 9845 |
| March | 2018 | 95,296 | 13,875 | 13875 | 7654 | 7654 |
| April | 2018 | 102,577 | 11,470 | 11470 | 6825 | 6825 |
| May | 2018 | 107,162 | 13,847 | 13847 | 10,120 | 10120 |
| June | 2018 | 110,889 | 12,827 | 12,827 | 11,546 | 11547 |
| Unit of Measure | | | | | | |

37.     Easterday described the Easterday Ranches hedging strategy as follows: "hedge live cattle inventory using mostly the front month contract as I feel the front month has the most potential weakness."

38.     The 2018 Application materially overstated Easterday Ranches' actual cattle inventory, purchases, and sales.

39.     Based upon the materially false and misleading information provided by Easterday, who was not engaged solely in bona fide hedging activities to hedge the represented cash risks of Easterday Ranches, on or around July 23, 2018, CME's

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF
11

Market Regulation Department sent Easterday a letter noting that it had approved the 2018 Application and increased Easterday Ranches' live cattle exchange position limit.

40.    Easterday has admitted to making false or misleading statements to the CME in connection with the 2017 and 2018 Applications.

41.    On at least October 13, 2017 and July 11, 2018, Easterday Ranches did not possess a valid hedge exemption permitting it to exceed applicable CME speculative position limits in feeder and live cattle futures, respectively.

## V.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2020)**

**Fraud in Connection with Contract for Sale or Purchase of Commodities in Interstate Commerce**

42.    The allegations set forth in Paragraphs 15–41 above are realleged and incorporated herein by reference.

43.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, to:

> [U]se or employ, or attempt to use or employ, in connection with ay swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate

by not later than 1 year after [July 1, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

44.     Regulation 180.1(a), 17 C.F.R. § 180.1(a), provides in part:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

(1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

(2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;

(3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

45.     Cattle are "livestock" and therefore commodities under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018).

46.     From at least October 2016 through November 2020, as set forth in Paragraphs 15–41 above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.l(a)(1)–(3) by, among other things, in connection with the sale of commodities in interstate commerce, submitting to the Producer fraudulent invoices for more than 200,000 head of cattle and receiving reimbursement for the purchase price and grow costs associated with them.

47.     In at least 2017 and 2018, as described in Paragraphs 28–41 above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) by submitting to the CME false or misleading statements in hedge exemption applications concerning Easterday Ranches cattle inventory, purchases, and sales to avoid disciplinary action and scrutiny from the exchange.

48.     Defendants engaged in the acts and practices described above intentionally or recklessly.

49.     By this conduct, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.l(a)(1)–(3).

50.     Each act of:  (a) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (b) making, or attempting to make, untrue or misleading statements of material fact, or omitting to state material facts necessary to make the statements not untrue or misleading; and (c) engaging, or attempting to engage, in any act, practice, or course of business, which operated or would operate as a fraud or deceit upon any person, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.l(a)(1)–(3).

51.     As set forth in Paragraphs 15–41 above, Easterday violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.l(a)(1)–(3) within the scope of his employment, office or agency with Easterday Ranches.  Easterday Ranches is therefore liable as a principal

for Easterday's acts, omissions, and failures constituting violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.l(a)(1)–(3) pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2020).

52.    As set forth in Paragraphs 13–41 above, Easterday controlled Easterday Ranches during the Relevant Period.  Easterday failed to act in good faith and/or knowingly induced Easterday Ranches' violations alleged herein during that time period. Easterday is therefore liable for Easterday Ranches' violations as a controlling person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018). Therefore, Easterday is liable directly and as a control person of Easterday Ranches.

## COUNT TWO

**Violations of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2018)**
**False Statements to a Registered Entity**

53.    The allegations set forth in Paragraphs 15–41 above are realleged and incorporated herein by reference.

54.    Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2018), makes it unlawful for any person "willfully to . . . make any false, fictitious, or fraudulent statements or representations . . . to a registered entity, board of trade, . . . or futures association designated or registered under [the Act] acting in furtherance of its official duties under [the Act]."

55.    CME is a registered entity under Section 1a(40)(A) of the Act, 7 U.S.C. § 1a(40)(A) (2018).

56.     In at least 2017 and 2018, Defendants submitted inaccurate applications for position limit exemptions by:

    a.  Submitting to CME, on or around October 19, 2017, an application to exceed CME feeder cattle position limits that substantially and materially overstated Easterday Ranches' cattle inventory, purchases, and sales; and

    b.  Submitting to CME, on or around July 12, 2018, an application to exceed CME live cattle position limits that substantially and materially overstated Easterday Ranches' cattle inventory, purchases, and sales.

57.     In requesting, receiving, reviewing, and granting the 2017 Application and the 2018 Application, the CME was acting in furtherance of its official duties under the Act.

58.     Each act of making a false, fictitious, or fraudulent statement or representation to a registered entity, board of trade, or futures association designated or registered under the Act or acting in furtherance of its official duties under the Act is alleged as a separate and distinct violation of 7 U.S.C. § 13(a)(4).

59.     As set forth in Paragraphs 13–41 above, Easterday violated 7 U.S.C. § 13(a)(4) within the scope of his employment, office, or agency with Easterday Ranches.  Easterday Ranches is therefore liable for Easterday's acts, omissions, and

failures constituting violations of 7 U.S.C. § 13(a)(4) pursuant to 7 U.S.C.

§ 2(a)(1)(B) and 17 C.F.R. § 1.2.

60.    As set forth in Paragraphs 13–41 above, Easterday controlled Easterday Ranches during the Relevant Period.  Easterday failed to act in good faith and/or knowingly induced Easterday Ranches' violations alleged herein during that time period. Easterday is therefore liable for Easterday Ranches' violations as a controlling person pursuant to 7 U.S.C. § 13c(b).  Therefore, Easterday is liable directly and as a control person of Easterday Ranches.

## COUNT THREE

### Violations of Section 4a(e) of the Act, 7 U.S.C. § 6a(e) (2018)
### Exceeding CME Position Limits for Live and Feeder Cattle Futures Contracts

61.    The allegations set forth in Paragraphs 15–41 above are realleged and incorporated herein by reference.

62.    Section 4a(e) of the Act, 7 U.S.C. § 6a(e) (2018), makes it unlawful "for any person to violate any bylaw, rule, regulation, or resolution of any contract market, derivatives transaction execution facility, or other board of trade licensed, designated, or registered by the Commission or electronic trading facility with respect to a significant price discovery contract fixing limits on the amount of trading which may be done or positions which may be held by any person under contracts of sale of any commodity for future delivery or under options on such

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

17

contracts or commodities, if such bylaw, rule, regulation, or resolution has been approved by the Commission or certified by a registered entity."

63.    CME is a registered entity under Section 1a(40)(A) of the Act, 7 U.S.C. § 1a(40)(A) (2018), and a designated contract market for trading live cattle futures contracts and feeder cattle futures contracts pursuant to Section 5 of the Act, 7 U.S.C. § 7 (2018).

64.    Under CME Rule 562, "[a]ny positions, including positions established intraday, in excess of those permitted under the rules of the Exchange shall be deemed position limit violations."

65.    CME Rules 10202.E and 559 in effect for the October 2017 feeder cattle futures contracts imposed an initial spot month position limit of 300 contracts long or short.  The CFTC approved the spot month limit.

66.    On or around October 13, 2017, Easterday Ranches' intraday high position in feeder cattle futures was 329 contracts, or 29 contracts above the CME exchange-set position limit for feeder cattle.

67.    CME Rules 10102.E and 559 in effect for the August 2018 live cattle futures contracts imposed a single-month position limit of 6,300 contracts long or short.  The CFTC approved the single-month limit.

68.     On or around July 11, 2018, Easterday Ranches' intraday high futures-equivalent position in live cattle futures was 6,426.645 contracts, or 126.645 contracts above the CME exchange-set single-month position limit for live cattle.

69.     CME Rule 559 states that to obtain an exemption from position limits, a person must, inter alia, "[p]rovide a complete and accurate explanation of the underlying exposure related to the exemption request," and "[a]gree to promptly submit a supplemental statement to the Market Regulation Department whenever there is a material change to the information provided in the most recent application."

70.     As alleged in Paragraphs 15–41, Defendants submitted inaccurate, false, fictitious, or fraudulent information in connection with the 2017 Application and 2018 Application by overstating Easterday Ranches' cattle inventory, purchases, and sales.

71.     By submitting materially inaccurate, false, fictitious, or fraudulent statements in connection with the 2017 Application and the 2018 Application, Defendants violated CME Rule 559.

72.     Because the exemptions from position limits granted by the CME in 2017 and 2018 were based on inaccurate, false, fictitious, or fraudulent statements submitted by Defendants, those exemptions were not valid.

73. Because the exemptions from position limits granted by CME in 2017 and 2018 were not valid, Easterday Ranches violated CME position limits for feeder cattle in 2017 and live cattle in 2018.

74. Each act of exceeding CME's position limits including, but not limited to, those specifically alleged herein, constitutes a separate violation of Section 4a(e) of the Act.

75. As set forth in Paragraphs 13–41 above, Easterday controlled Easterday Ranches during the Relevant Period. Easterday failed to act in good faith and/or knowingly induced Easterday Ranches' violations alleged herein during that time period. Easterday is therefore liable for Easterday Ranches' violations of Section 4a(e) as a controlling person pursuant to 7 U.S.C. § 13c(b).

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to the Court's own equitable powers:

A. Find that Defendants Cody Easterday and Easterday Ranches violated Sections 4a(e), 6(c)(1), and 9(a)(4) of the Act, 7 U.S.C. §§ 6a(e), 9(1), and 13(a)(4) (2018), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2020);

B.      Enter an order of permanent injunction enjoining Defendants, their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receives actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6a(e), 9(1), and 13(a)(4) and 17 C.F.R. § 180.1(a)(1)– (3);

C.      Enter an order of permanent injunction prohibiting Defendant Cody Easterday and any of his affiliates, agents, servants, employees, assigns, attorneys, and persons in active concert or participation with him, from directly or indirectly:

    i.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

    ii.      Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)) for accounts held in the name of any Defendants or for accounts in which any Defendant has a direct or indirect interest;

    iii.      Having any commodity interests, traded on any Defendant's behalf;

iv.    Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

v.    Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

vi.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and

vii.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

D.    Enter an order directing Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, real and personal property and trading profits derived, directly or indirectly, from acts or practices which constitute violations of

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF

the Act and the Regulations as described herein, including pre- and post-judgment interest;

E.    Enter an order requiring Defendants, as well as any successors thereof, to make full restitution to every person or entity whose funds Defendants received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest;

F.    Enter an order directing Defendants to pay a civil monetary penalty, assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114–74, 129 Stat. 584 (2015), tit. VII, § 701, 129 Stat. 584. 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2020), for each violation of the Act and Regulations, as described herein;

G.    Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2018); and

H.    Enter an Order providing such other and further relief as this Court may

deem necessary and appropriate under the circumstances.

Dated:  March 31, 2021                    Respectfully submitted,

                                          */s/ Benjamin E. Sedrish*

                                          Benjamin E. Sedrish
                                          Ashley J. Burden
                                          Allison V. Passman
                                          Commodity Futures Trading Commission
                                          525 W. Monroe St., Ste. 1100
                                          Chicago, IL 60661
                                          Tel. (312) 596-0700
                                          Fac. (312) 596-0714
                                          *bsedrish@cftc.gov*
                                          *aburden@cftc.gov*
                                          *apassman@cftc.gov*